UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 OCT 30 AM 9:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

PEGGY S. HULSEY,           )
                           )
    Plaintiff,             )
                           )
vs.                        )    Civil Action No. 97-S-1856-NE
                           )
CRACKER BARREL OLD COUNTRY )
STORE, INC.,               )
                           )
    Defendant.             )

ENTERED
OCT 30 1998

### MEMORANDUM OPINION

Peggy S. Hulsey is a former employee of Cracker Barrel Old Country Store, Inc. Her complaint contains but one claim: retaliation "in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended."[1] Plaintiff alleges that, "after complaining of [sexual] harassment[,] she was subjected to further harassment, discriminated against in scheduling[,] ... [and] given a low performance rating unjustly."[2] The action now is before the court on defendant's motion for summary judgment.

### I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---
[1] Complaint ¶ 6. Section 704(a), codified at 42 U.S.C. § 2000e-3(a), is discussed *infra*.
[2] Complaint ¶ 6.

is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)(citing

2

United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton, 965 F.2d at 999 (quoting Anderson, 477 U.S. at 255, 106 S.Ct. at 2513). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

With those standards in mind, the court now proceeds to summarize the undisputed facts or, if disputed, to frame them in a light most favorable to plaintiff.

## II. STATEMENT OF FACTS

Peggy Hulsey began her employment with Cracker Barrel Old Country Store, Inc., on July 6, 1995.[3] She applied for, and was hired to work on a part-time basis[4] in the position of "backup

---

[3] Plaintiff's Deposition at 21.
[4] Ms. Hulsey worked three days (usually Fridays, Saturdays, and Sundays), 22 to 25 hours a week, from the beginning of her employment with defendant (id. at 53-54) until early 1996 when, as discussed on page 5 infra, she requested, and was granted permission, to work an additional day each week.

3

cook." There were two such cooks on each shift, and both prepared vegetables, breads, and kept "a running line going where the cooks on the grill could get their order."[5] Ms. Hulsey indicated on her job application that she could work evenings and weekends,[6] and she was assigned to those shifts throughout her employment with Cracker Barrel.[7]

On October 18, 1995, Peggy Hulsey complained to the store manager, Grady Westmoreland, of sexual harassment by one of her supervisors, Carl Walker.[8] Cracker Barrel obviously promptly investigated plaintiff's complaint and took appropriate remedial action, because plaintiff testified that Carl Walker never bothered her again.[9] (It also should be noted that Hulsey did not assert a sexual harassment claim in this suit.)

Following the resolution of Hulsey's harassment complaint, plaintiff had no criticisms about the conditions of her employment for a period of about three months. Indeed, she was awarded a ten cent per hour pay increase later that same month, on October 29, 1995.[10] She also received a favorable employee appraisal the

---

[5] *Id.* at 25-26.

[6] Defendant's Exhibit 2A.

[7] Plaintiff's Deposition at 25-26, 53-54. *See also id.* at 66, where plaintiff testified:
> I worked Friday nights until closing. I came in at eight o'clock on Saturday morning and worked until four. I came in at eight on Sunday morning and worked until four.

[8] *Id.* at 36-39.

[9] *Id.* at 41.

[10] Defendant's Exhibit 2A.

4

succeeding month, on November 14, 1995.[11] Regardless, plaintiff's attitude toward her job changed during January of 1996.[12]

Prior to that metamorphosis, however, on some date in late October or early November of 1995 that is not established by the record, Peggy Hulsey slipped and fell while performing her job duties.[13] She injured her shoulder, back, and neck, but continued to work "on restricted duty" for "two or three weeks."[14] Even so, her reduced responsibilities still were "too hard" for plaintiff to perform. Thus, "around Thanksgiving" of 1995, plaintiff's physician took her off work entirely, and sent her to physical therapy.[15] Ms. Hulsey did not return to work until January of 1996.[16]

Plaintiff initially resumed her prior work schedule,[17] but she soon asked to work an additional day each week. That request was approved by Cracker Barrel.[18]

Peggy Hulsey's employment with Cracker Barrel was terminated in April of 1996. The reason for her termination was violation of Cracker Barrel's absenteeism policy.[19] Plaintiff has not asserted

---

[11] Plaintiff's Deposition at 77; Defendant's Exhibit 3.
[12] Id. at 42, 51-54.
[13] Id. at 42.
[14] Id. at 49-50.
[15] Id. at 50-51.
[16] Id. at 42, 51-54.
[17] See note 7 supra.
[18] Plaintiff's Deposition at 52-54, 66.
[19] Id. at 22, 105.

5

that her termination was retaliatory. Rather, the employment actions about which she complains were less serious than that. As previously noted, plaintiff alleges that, "after complaining of [sexual] harassment[,] she was subjected to further harassment, discriminated against in scheduling[,] ... [and] given a low performance rating unjustly."[20] At best, however, only one of those allegations is even arguably supported by the evidence.

For example, plaintiff claims she was assigned additional, unpleasant job duties following her return to work post-injury, in retaliation for her complaint of sexual harassment.

> A. Well, there was a lot of job duties that I felt like that they were putting on me that other shifts were responsible for.
>
> Q. This is when you came back in January?
>
> A. Yes.
>
> Q. Tell me what those job duties were.
>
> A. Keeping the areas clean.
>
> Q. When you say areas, what do you mean by that?
>
> A. Under the kettles there is a trough that has to be cleaned out and everything is supposed to be clean for the next shift that comes in. And I would come in and it would be full of food and water, nasty. They would let people leave earlier than their shift was [supposed to be] over so that — they would leave their cleanup work for me to do and their preparation work for me to do, and it should be ready when I come in for my shift.

(Plaintiff's Deposition at 54-55.) There is no merit to that

---

[20] Complaint ¶ 6.

6

claim. Plaintiff admitted she was not singled out for such "nasty" jobs; rather, the other backup cook working the same shift as plaintiff faced the identical chore of cleaning up the prior shift's mess.[21] Thus, Cracker Barrel did not subject plaintiff to discriminatory treatment in this respect.

Plaintiff next professes that she was unjustly given an unsatisfactory job performance evaluation in retaliation for her complaint against Carl Walker. There is no merit to that assertion either. It is clear, as plaintiff ultimately admitted during deposition, that an overworked evaluator committed a simple, human error: *i.e.*, he mistakenly wrote plaintiff's name on another employee's evaluation form.[22] The blunder was promptly revised when plaintiff protested: she received a corrected, favorable employee appraisal on November 14, 1995, as an acknowledgment of the mistake.[23]

Ms. Hulsey finally asserts that, following her return to work in January of 1996, "the assistant managers were avoiding me as much as possible," but when it was necessary for them to converse with her "their tone was real demanding and basically rude."[24] She

---

[21] *Id.* at 58-59.

[22] See *id.* at 75 (lines 13-16), where plaintiff described the evaluator, "James," as saying in response to her complaint: "I was making out three evaluations that day and I don't know if I was drunk or on drugs, but I will make you out another one."

[23] *Id.* at 74-78.

[24] *Id.* at 68.

7

also believes the failure of some co-employees to talk to her was related to her complaint against Mr. Walker.[25]

Thus, Ms. Hulsey's complaint of retaliation ultimately rests upon a single, weak reed: a fact that is tacitly admitted by her thin, two (2) page response to defendant's motion for summary judgment.[26]

### III. DISCUSSION

Section 704(a) of Title VII provides protection to those who oppose or participate in uncovering an employer's discriminatory practices. That provision provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he [the employee] has opposed any practice made an unlawful employment practice by this [title], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title].

Section 704(a), now codified at 42 U.S.C. § 2000e-3(a), thus recognizes two bases for a claim of retaliation: one for opposition to prohibited practices, and one for participation in protected activity. Plaintiff's claim in this case arises under the opposition clause.

To establish a *prima facie* case of retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show: (1) she engaged in statutorily protected expression or activity; (2) she suffered an adverse

---

[25] *Id.* at 69-73.
[26] See Document No. 12.

8

employment action; and (3) the adverse employment action was causally related to the protected expression or activity. *E.g., Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

In addition, when (as in this case) a complaint of retaliation is based upon the opposition clause of 42 U.S.C § 2000e-3(a), the plaintiff also must demonstrate a good faith, reasonable basis for believing that the underlying, allegedly discriminatory conduct which she opposed (or about which she complained) was actually unlawful.

> We previously have recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and records presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.
>
> A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment; such a

9

requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir. 1978). *See also Payne v. McLemore's wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981)("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices."), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

*Little v. United Technologies,* 103 F.3d 956, 960 (11th Cir. 1997)(emphasis in original)(footnote omitted); *see also Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir. 1978). Neither party addressed this issue.

Nevertheless, defendant does not dispute the first element of a *prima facie* case. Cracker Barrel limits its arguments in brief to the second and third elements. Accordingly, the court will assume that plaintiff possessed the requisite good faith, objectively reasonable basis for believing that one of her supervisors had subjected her to sexual harassment, and that she accordingly engaged in statutorily protected expression or activity when she complained to defendant's store manager of such allegedly unlawful conduct.

Turning then to the remaining elements of a *prima facie* case,

10

only the second — the requirement that plaintiff demonstrate she suffered an "adverse employment action" — merits extended discussion.

### A. The Definition of an "Adverse Employment Action"

There is a circuit split on the nature or character of employment actions that are sufficiently "adverse" as to be actionable under 42 U.S.C. § 2000e-3(a). The Fifth and Eighth Circuits, for example, hold that "Title VII was designed to address ultimate employment decisions, not ... every decision made by employers that arguably might have some tangential effect upon those ultimate decisions," and that "[u]ltimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)(internal quotation marks omitted); *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997)(holding that only ultimate employment decisions are actionable under Title VII, and that "[c]hanges in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case").

The First, Ninth, and Tenth Circuits, on the other hand, hold that Title VII's protection against retaliatory discrimination extends to adverse actions that fall short of ultimate employment

11

decisions. *See Wyatt v. City of Boston*, 35 F.3d 13, 15-16 (1st Cir. 1994)(stating that actions less serious than a discharge are actionable, "such as demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees")(internal citation omitted); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375-76 (9th Cir. 1987)(holding that "[t]ransfers of job duties and undeserved performance ratings" are sufficiently adverse to be actionable); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)(construing Title VII's anti-retaliation clause liberally, to reach actions other than ultimate employment decisions, such as malicious prosecution actions: *i.e.*, "the filing of [criminal] charges against a former employee").

In addition, the District of Columbia Circuit has held that the Age Discrimination in Employment Act's anti-discrimination clause, which is identical to Title VII's, "does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." *Passer v. American Chemical Society*, 935 F.2d 322, 331 (D.C. Cir. 1991). *See also Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir. 1994)(holding that the ADEA's anti-retaliation clause covers more than discharge, demotion, or failure to promote, and that a "case

12

by case review" is necessary to determine whether an employer's actions rise to the level of adverse employment actions for purposes of stating a *prima facie* case of retaliation).

The Eleventh Circuit recently joined the majority of circuits that have addressed this issue, holding in *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998), that "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions." While recognizing that, undoubtedly, there "is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause," the *Wideman* panel declined to "determine in this case the exact notch into which the bar should be placed." *Id.*[27]

Even so, another panel of the Eleventh Circuit provided some guidance for determining the level of the bar dividing employment actions that are sufficiently "adverse" as to be actionable from

---

[27]In Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998), beginning the day after plaintiff informed management that she had filed an EEOC charge, defendant's managers: (1) "improperly listed [her] as a no-show on a day she was scheduled to have off"; (2) "required her to work [on a day she was scheduled to be off] without a lunch break"; (3) gave plaintiff two written reprimands, resulting in a one-day suspension; (4) solicited "negative statements concerning Wideman" from co-employees; (5) delayed authorization of medical treatment for a work-related condition; and (6) "Assistant Manager Rene Willemain threatened to shoot [plaintiff] in the head."

It should come as no great shock, therefore, that the *Wideman* panel concluded that "the actions about which Wideman complains <u>considered collectively</u> are sufficient to constitute prohibited discrimination. We need not and do not decide whether anything less than the totality of the alleged reprisals would be sufficient." *Id.* at 1456 (emphasis supplied).

13

those which are not. In *Doe v. Dekalb County School District*, 145 F.3d 1441 (11th Cir. 1998), the court addressed an issue of first impression within the Eleventh Circuit: *i.e.*, "whether a court should view an employment action from the <u>subjective</u> perspective of a particular plaintiff or the <u>objective</u> perspective of a 'reasonable person.'" *Id.* at 1447 (emphasis supplied).[28] One reason the issue had not previously been addressed is this:

> in most employment discrimination cases the issue of a plaintiff's subjective preference need not arise, because the plaintiff has alleged an employment action that would appear adverse to any reasonable person. Where a plaintiff has allegedly suffered termination, demotion, reduction in pay, loss of prestige, or diminishment of responsibilities, for example, a court normally has no cause to consider its standard for adversity; the relevant question in such cases is whether such patently adverse actions actually took place.

*Id.* at 1448. The *Doe* court adopted an objective test: a plaintiff establishes an "adverse employment action" only if he "demonstrate[s] that a reasonable person in his position would view the employment action in question as adverse." *Id.* at 1449. "Any adversity must be material; it is not enough that [the contested employment action] imposes some *de minimis* inconvenience or

---

[28]*Nota bene:* the *Doe* case addressed a claim founded upon the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Nevertheless, as the court noted, Eleventh Circuit precedent interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.S. §§ 621-634, and the ADA "have often relied on the same 'adverse employment action' concept that is an essential element of a prima facie ADA case. ... We can assist our consideration of the adversity standard under the ADA, therefore, by looking to the broader experience of our court and others with employment discrimination law." *Doe*, 145 F.3d at 1448 (citations omitted).

14

alteration of responsibilities." 145 F.3d at 1453. As the Seventh Circuit said in an opinion quoted approvingly by the *Doe* court, "not everything that makes an employee unhappy is an actionable adverse action." 145 F.3d at 1449 (quoting *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)).

And that is exactly what Peggy Hulsey presents this court to support her claim of retaliation: her subjective unhappiness over the manner in which some supervisors and co-employees allegedly dealt with her. Consequently, she has not demonstrated an actionable "adverse employment action."

## B. The Requirement of a Causal Linkage

Even if this court were to find that such trivial matters rose to the "threshold level of substantiality that must be met for" allegedly discriminatory employment action to be deemed materially "adverse," plaintiff still fails to demonstrate the third element of her claim. When a plaintiff fails to present any evidence of a causal linkage between her protected opposition to unlawful employment practices and the alleged adverse employment action inflicted in retaliation therefor, the court must dismiss the claim. *Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir. 1988); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986); *Hamm v. Members of Board of Regents of State of Florida*, 708 F.2d 647, 654

15

(11th Cir. 1983).

The causal linkage requirement is interpreted broadly by the Eleventh Circuit: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks*, 15 F.3d at 1021 (quoting *EEOC v. Reichhold Chemical, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).

The causal linkage may be inferred from circumstantial evidence. *See, e.g., Goldsmith*, 996 F.2d at 1163 ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. ... The defendant's awareness ... may be established by circumstantial evidence.").

The linkage has been deemed established, for example, where only a short period of time passed between the protected expression or activity and the adverse employment action. *See Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307, 1314-15 (7th Cir. 1989)(for purposes of establishing a *prima facie* case, the "telling" temporal sequence of events — plaintiff's complaint followed shortly by adverse employment actions — demonstrate a causal link).

Peggy Hulsey argues a causal linkage is demonstrated by the temporal proximity between her protected activity and the alleged

16

retaliatory acts: *i.e.*, plaintiff complained to the store manager of sexual harassment by Carl Walker on October 18, 1995, and the conduct about which she complains began some three months later, during January of 1996. However, such evidence does not, by itself, suggest a causal relationship. In *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499 (7th Cir. 1998), the Seventh Circuit refused to find a causal linkage, even though only two months separated plaintiff's filing of suit from the termination of her employment.

> A "'telling temporal' sequence" can establish that nexus [requirement of a *prima facie* retaliation claim], *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir. 1989), but by "telling" we mean that the employer's adverse action follows fairly soon after the employee's protected expression. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997). As the period of time separating the two lengthens, the hint of causation weakens. *Id.* at 797. [Plaintiff's] discharge occurred five months after she filed her charge of discrimination [and just two months after she filed suit [29]], and we have previously concluded that when so much time passes before the adverse action takes place, the order in which the events occurred does not by itself suggest a causal link between them. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(four

---

[29] See Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 504 (7th Cir. 1998):

> On May 17, Davison filed a complaint with the EEOC and the Wisconsin Equal Rights Division claiming that Midelfort had discriminated against her on the basis of her disability. After receiving a right-to-sue letter from the EEOC, Davidson filed this suit on August 1, 1995, alleging that Midelfort had violated the ADA by refusing to accommodate her disability. On October 13, Skold and Marten fired Davidson. ... Davidson subsequently amended her complaint in this litigation to add the charge that she was fired in retaliation for pursuing her rights under the ADA.

17

months); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992)(nearly six months).

*Davidson*, 133 F.3d at 511; *see also*, e.g., *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3rd Cir. 1997)("the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."); *Rio v. Runyon*, 972 F. Supp. 1446 (S.D. Fla. 1997)(seven months between opposition and termination too remote to raise causal inference).

Plaintiff presents no evidence linking the alleged retaliation to her complaint of sexual harassment, other than the temporal sequence discussed above. In the opinion of this court, that does not alone suggest a causal relationship.

## IV. CONCLUSION

For all of the foregoing reasons, therefore, this court holds: plaintiff has not established a *prima facie* case; no inference of discriminatory retaliation arises; and this action accordingly is due to be dismissed. An appropriate order consistent with this memorandum opinion will be issued contemporaneously herewith.

DONE this 30th day of October, 1998.

_____
United States District Judge

18